UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VERONICA AHEARN,

                Plaintiff,

     V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

08-CV-951
(GLS/VEB)

## I. INTRODUCTION

In September of 2004, Plaintiff Veronica Ahearn applied for child's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been disabled since September 1, 1990, due to a learning disability. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, through her attorney, Peter M. Margolius, Esq., commenced this action on September 9, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for child's DIB and SSI benefits on September 7, 2004, alleging disability beginning on September 1, 1990. (T at 16).[1] The applications were denied initially and on reconsideration. (T at 16, 28-31). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T at 16, 32-33). On November 18, 2005, a hearing was held before ALJ Robert Wright in Albany, New York. (T at 250-271). Plaintiff, represented by counsel, appeared and testified. (T at 16, 250). A supplemental hearing was held on March 13, 2006, at which a vocational expert testified. (T at 236-49). On June 29, 2006, ALJ Wright issued a decision denying the applications for benefits. (T at 16-26). Plaintiff filed a request for review of that decision. The ALJ's decision became the Commissioner's final decision on June 8, 2008, when the Appeals Council denied Plaintiff's request. (T at 3-6).

Plaintiff, through counsel, commenced this action on September 9, 2008. (Docket No. 1). Plaintiff filed a supporting Brief on December 18, 2008. (Docket No. 9). The Commissioner filed a Brief in opposition on January 27, 2009. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that this matter be referred to the Commissioner for further consideration.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.  Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the

3

Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

In this case, Plaintiff argues that she is entitled to benefits under the Social Security Act as a disabled adult child.  An adult may be eligible for child's benefits if he or she was the child of a deceased wage earner, is unmarried, and if the disability began before the claimant reached the age of twenty-two. 42 U.S.C. § 402 (d)(1).  There is no dispute that Plaintiff is the unmarried child of Brian Ahearn, a wage earner who died in August of 2004. (T at 16).  Thus, to establish entitlement to disabled adult child benefits, Plaintiff must prove that she is disabled and that the disability began prior to age twenty-two.  The term "disability" has substantially the same definition in this context as it does in traditional, adult disability cases.  See 42 U.S.C. §§ 423 (d) and 1382 (a)(3). As such, the five-step sequential evaluation process outlined above is applicable here.

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the non-disability requirements for child's DIB pursuant to §202 (d) of the Act. (T at 18).  The ALJ further found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. (T at 18).  He

concluded that Plaintiff had the following impairment: borderline intellectual functioning and that the impairment was "severe," as that term is defined under the Act. (T at 18). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 20). The ALJ determined that Plaintiff had the residual functional capacity to perform unskilled work at any exertional level, provided the work did not require reading or an ability to perform math, and provided the work permitted occasional concentration problems. (T at 20).

After considering Plaintiff's age (19 years old on the date of application), education (11th grade), work experience (no past relevant work), and residual functional capacity, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 24). Accordingly, the ALJ determined that Plaintiff was not disabled under the ACT at any time relevant to the decision. (T at 25). As noted above, the ALJ's decision became the Commissioner's final decision on June 8, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers several arguments in support of her position. First, she contends that new and material evidence was submitted to the Appeals Council, which established that her impairments met or medically equaled §112.05 of the Listings.

Specifically, Plaintiff provided the Appeals Council with a report prepared by Safieh Kash, Ph.D. of the Ulster Rehabilitation Clinic, dated December 13, 2006. (T at 233-34). Dr. Kash indicated that Plaintiff had a General Adaptive Composite Score ("GAC") of 54, which was three (3) standard deviations from the mean. (T at 233). This placed Plaintiff in the

extremely low functioning range with respect to her adaptive skills. (T at 233). She also scored in the 0.1, 2nd, and 0.4 percentiles for conceptual, social, and practical domains of functioning. (T at 234).

The Appeals Council considered the Kash report (T at 6), but concluded that it did not provide a basis for changing the ALJ's decision. (T at 4). Plaintiff argues that the Kash report was new and material evidence, which demonstrated that her impairments met or medically equaled §112.05 of the Listings. Plaintiff contends that the Appeals Council erred by refusing to remand or reverse the ALJ in light of this new evidence.

### a.  New Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b).

In sum, to obtain review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)). Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id.

Even if "the Appeals Council denies review after considering new evidence, the

[Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision"). If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F.Supp.2d 297, 302 (D.Conn.2009).

The sole argument offered by the Commissioner is that Dr. Kash's report was irrelevant because it post-dated the ALJ's decision by approximately six (6) months. (Docket No. 10 at p. 14). In other words, the Commissioner contends, Dr. Kash's assessment should be completely disregarded because he evaluated Plaintiff's abilities as of the date of exam (December 13, 2006) and not as of any time prior to the ALJ's decision (June 29, 2006).

The Commissioner's argument is contrary to Second Circuit authority expressly holding that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." Newbury v. Astrue, 321 Fed.Appx. 16, 2009 WL 780888, at *2 n.2 (2d Cir. Mar. 26, 2009)(citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir.2004)). The categorical refusal to consider evidence solely because it was created after the date of the ALJ's decision is an error. Pollard, 377 F.3d at 193 ("Although the new

8

evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought"); see also Sergenton v. Barnhart, 470 F. Supp.2d 194, 204 (E.D.N.Y. 2007).

Further, Dr. Kash's report indicates that Plaintiff's cognitive impairments are more severe than previously thought and directly supports her contentions in this regard. There is also no indication in the report that the Plaintiff's cognitive functioning would have been expected to have been better in the years preceding the testing. In other words, there appears to be good reason to believe that the testing performed less than six (6) months after the ALJ's decision is suggestive that Plaintiff's condition was materially more serious than the ALJ thought. Indeed, the ALJ's assessment was based largely on Plaintiff's testimony concerning her activities of daily living, including the fact that she apparently lived with her boyfriend and cared for her child for several months. (T at 271). The ALJ used this testimony, along with some favorable educational records, to discount the findings of a consultative examiner, Carol A. Levett, who diagnosed extreme limitations and an inability to maintain competitive employment. (T at 208-216). The Appeals Council should have afforded the ALJ an opportunity to revisit his assessment of Dr. Levett's determination in light of the objective testing performed by Dr. Kash.

Moreover, this Court is concerned about certain factual conclusions that the ALJ reached in his decision. For example, Plaintiff testified that she worked at a grocery store part-time for approximately two weeks. The ALJ made the following finding based upon that

testimony: "[T]he claimant already proved that she could obtain competitive employment. She left that competitive employment, not because of her cognitive limitations, but because she had a baby and needed to take care of it." (T at 22).  However, what Plaintiff actually said was that she left her employment because "I did deli and it had like codes and I didn't know who [*sic*] to do that." (T at 256).  Although Plaintiff's mother suggested that Plaintiff quit her job to take care of her baby (T at 268), she also testified that Plaintiff could not "function on her own out in the real world" and was only able to function at the deli because a friend stayed close by and helped her perform the job. (T at 269-70).  Thus, this Court finds it difficult to conclude that substantial evidence supports the ALJ's finding that the termination of Plaintiff's employment was unrelated to her limitations.  Moreover, contrary to the ALJ's assessment, a two-week term of work at a deli, with a friend apparently acting as a *de facto* job coach by paying special attention to her needs, is not particularly persuasive proof that Plaintiff "could obtain competitive employment."  On remand, the ALJ should revisit these findings in light of the concerns expressed herein, as well as the new evidence from Dr. Kash.

Lastly, the ALJ also relied on educational records from Plaintiff's special education enrollment indicating that Plaintiff was a "hard worker" with "excellent social skills." (T at 102-103, 170).   However, the ALJ does not appear to have adequately accounted for the Commissioner's regulations, which "require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20

C.F.R. § 416.924c (a),(d)); see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).  When weighing the educational records and determining whether Plaintiff had the ability to perform the basic mental activities on a sustained basis, the ALJ was obligated to consider the effect of a structured environment on Plaintiff's performance.  This is particularly necessary where, as here, the claimant attended a special education (*i.e.,* 12:1:1) program. (T at 95).  Consideration should be given to these matters on remand.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above and particularly in light of the Appeals Council's failure to remand the matter for consideration of Dr. Kash's report, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's

Motion be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Dated:   February 5, 2010

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 5, 2010

*[signature]*

Victor E. Bianchini
United States Magistrate Judge